Donald COLEMAN, Appellant
(Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 86–159.

Supreme Court of Wyoming.

Aug. 14, 1987.

Leonard D. Munker, State Public Defender, Julie D. Naylor, Appellate Counsel, Cheyenne, for appellant (defendant).

A.G. McClintock, Atty. Gen., Gerald A. Stack, Deputy Atty. Gen., John W. Renneisen, Sr. Asst. Atty. Gen., and David K. Gruver, Asst. Atty. Gen., for State of Wyo.

Before BROWN, C.J., and THOMAS, CARDINE, URBIGKIT and MACY, JJ.

THOMAS, Justice.

The primary issue to be addressed in this case is the application of Rule 404(b), W.R.E., to the admission of evidence of other crimes, wrongs, or acts in a case in which the element of the crime in issue was the identity of the accused. Coleman was found guilty of knowingly injuring or destroying the property of another in violation of the prohibition and felony sanction set forth in § 6–3–201(a) and (b)(iii), W.S. 1977, Cum.Supp.1985.[1] The trial court per-

---

1. Section 6–3–201(a) and (b)(iii), W.S.1977, Cum.Supp.1985, provides:

"(a) A person is guilty of property destruction and defacement if he knowingly defaces, injures or destroys property of another without the owner's consent.

"(b) Property destruction and defacement is:

\*   \*   \*   \*   \*   \*

"(iii) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the cost of restoring injured prop-

mitted one of the victims to testify, over objection and for the purpose of establishing Coleman's ill will, that Coleman threatened to kill their daughter. There is a second issue argued relating to the sufficiency of the evidence to sustain the jury's verdict. Although some suggestions concerning the process for applying Rule 404(b), W.R.E., are offered, we hold there was no error in the admission of the challenged testimony. We conclude that, examined according to the usual standard, all of the evidence was sufficient to sustain the verdict. We affirm the judgment and sentence of the trial court.

Coleman states two issues for this appeal:

> "I. Whether the introduction of evidence in violation of Rule 404(b), W.R.E., deprived appellant of a fair trial.
>
> "II. Whether there exists insufficient evidence to support appellant's conviction of destruction of property."

In the Brief of Appellee, the State sets forth three issues as follows:

> "I. Was evidence of appellant's prior acts admitted in violation of Rule 404(b), W.R.E.?
>
> "II. Was the admission of evidence of appellant's prior acts harmful error, requiring the reversal of his conviction?
>
> "III. Was the evidence sufficient to sustain the jury's verdict of guilty?"

In the latter part of 1981, Coleman became acquainted with Tammy Nielson. They shared living quarters for four to five months, and she became pregnant during this time. She terminated the relationship with Coleman before the child was born, and her action resulted in a "bitter" relationship. The harsh feelings escalated when the man she later married instituted proceedings to adopt the natural daughter of Coleman and Ms. Nielson. The degree of hostility is demonstrated vividly by the remark made in a telephone conversation in September of 1985 between Coleman and Ms. Nielson. They discussed the adoption proceedings and, in the course of the conversation, Coleman said to Ms. Nielson that "[h]e would get my daughter and if I [Ms. Nielson] ever got her back or made them give her back, I would get her in a pine box." It is Ms. Nielson's testimony about this remark which is the focus of the claim of error under Rule 404(b), W.R.E.

On December 21, 1985, Coleman was asked by a friend if he had been harassing Ms. Nielson any more. Coleman responded to the friend that he hadn't lately but that he was considering slashing her tires and that no one would be able to prove that he had done it. On January 2, 1986, Coleman telephoned Ms. Nielson and told her that he would be over to get the child, this despite an order which had been entered previously restraining him from seeing the child. Ms. Nielson reported this to the police, but they did not pursue the matter. Ms. Nielson and her husband then decided to sleep in their living room instead of their bedroom so they would be closer to the child's bedroom and the front door. At approximately 4:00 A.M., they were awakened by a loud noise. They checked the child's room and found that she still was there. Then they looked out the window of their home but were unable to see anyone outside. The following morning when they did go outside, they found the windshields broken out of three of their vehicles and nine tires on the vehicles slashed. They reported this damage to the police, and an officer was sent to the scene, but only a cursory investigation was accomplished. Through her independent inquiries, Ms. Nielson learned that no one else in the neighborhood had suffered property damage during the night time hours of January 2 and January 3, 1986. During the morning of January 3, 1986, Ms. Nielson telephoned Coleman's father. Coleman apparently was residing with his father, and upon answering the phone, the father advised Ms. Nielson that Coleman was not there and further that he did not know where Coleman was. Later in the morning, an unknown individual "dropped off" Coleman at his father's house. When he came in the house, Coleman's father asked him where he had been, and Coleman advised that he had been in Evanston the entire evening. His father

erty or the value of the property if destroyed is five hundred dollars ($500.00) or more."

then told Coleman of the conversation with Ms. Nielson and that she had reported damage to her vehicles. Not long after, Ms. Nielson telephoned again and asked Coleman "what he had accomplished in doing the damage to my home." Coleman's response was that "we could get together and talk about it."

At Coleman's trial, a witness testified about his prior act of kicking in Ms. Nielson's door. The trial court sustained an objection to that testimony and instructed the jury to disregard it. A motion for a mistrial based upon that testimony properly was denied. Then Ms. Nielson testified about Coleman's statement during the September, 1985 telephone conversation. This testimony was given in the context of developing the dispute over the adoption proceedings and was elicited during questioning with respect to Coleman's harassment of Ms. Nielson through repeated phone calls. When Ms. Nielson testified about Coleman's statement, defense counsel objected and moved for a mistrial. The court contemplated its ruling for two or three minutes, overruled the objection and allowed the testimony to continue. Later, in chambers during a recess, consistent with a suggestion in *Elliott v. State,* Wyo., 600 P.2d 1044 (1979), that a record of the court's finding under Rule 403, W.R.E., is helpful in reviewing the exercise of discretion in admitting evidence, the court made the following comment on the record:

> "* * * The Court counseled with the parties concerning how it was going to treat this case, how it was going to treat this evidence and what it expected of the State. It cautioned the State that the State should, in broad brush generalities, present the evidence concerning the background of these parties, the expressions of intent and state of mind by the Defendant, the continuing turmoil between the parties, * * * the hostility between the parties, in a broad brush sense and being very, very careful to avoid particularities about heinous or horrible or terrible acts by the Defendant. The Court required that the State reveal to the Court, out of the presence of the Jury, the substance of the testimony that it sought to elicit from the witnesses in order that the Court could make the rulings under 403 that it was required to make and to do that outside of the presence of the Jury. The Court was able to accomplish that and make the findings and reach the conclusion that there was not unfair prejudice to the Defendant by the testimony that the State was intending to offer, in all instances except one. And that instance occurred after the last recess when the Court took Counsel into chambers and asked Counsel what Mrs. Nielson was going to testify in response to the question what was the nature of the conversation concerning threats over the telephone. Counsel told the Court that the witness would testify that, as I recall, * * * Mr. Coleman would go to any lengths to stop the adoption. So the Court considered that under Rule 403 and concluded that it was broad enough in nature not to be unfairly prejudicial to the Defendant and that there was a purpose for its introduction, the state of mind, motive, intent, * * *. Then we went into Court and when we got into Court, Mrs. Nielson said 'He told me I would get my daughter back in a pine box.' And there was an objection and a motion for a mistrial. What the record will not reflect to the Supreme Court is Judge Troughton sitting on the bench, for what, Gentlemen, two minutes, three minutes, in contemplation of the surprise that had been offered and the objection and the motion for mistrial. Because the Court was before the Jury, it did not voice it's ruling even though the Court was spending that long period of time considering the objection and the motion for mistrial under Rule 403.
>
> "Now, the Court allowed the trial to continue, overruled the objection and did not grant the motion for mistrial because * * the Court made a determination that the testimony was admissible and it was not unfairly prejudicial. It was admissible * * * because it was relevant to the state of mind of the Defendant; it was relevant to show his intent; it was relevant for the purpose of showing purpose;

and it was relevant for giving the Jury the flavor and a feeling for the situation that existed between the parties. * * * It was made in connection with the adoption proceedings. It was connected to his * * * motive, to stop an adoption proceeding through force and intimidation and strong-arm tactics."

Coleman did not testify at his trial, and other than the hearsay statement to his father, no testimony supported his alibi. A manager of a bar in Lyman, Wyoming, which is near the place where the property was damaged, testified that Coleman was in that bar during the afternoon of January 2, 1986, returned around 7:00 P.M. and stayed there until 1:30 A.M. on the morning of January 3, 1986.

While Coleman argues reversible error with respect to the testimony of the two prior acts (kicking in the door and the statement about the child), his case really focuses on the statement about getting the child back in a pine box. The admissibility of prior bad acts of the accused in a criminal case is controlled by Rules 402, 403 and 404 of the Wyoming Rules of Evidence. See *Brown v. State*, Wyo., 736 P.2d 1110 (1987); *Noetzelmann v. State*, Wyo., 721 P.2d 579 (1986); *Bishop v. State*, Wyo., 687 P.2d 242 (1984), cert. denied 469 U.S. 1219, 105 S.Ct. 1203, 84 L.Ed.2d 345 (1985). While the process for applying these rules of evidence can be garnered from the several decisions of this court, it appears that the process has not been summarized.[2]

The process begins with the general rule of admissibility of relevant evidence set forth in Rule 402, W.R.E. Relevant evidence is defined as that evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Rule 401, W.R.E. Relevancy is a prerequisite to admissibility, but it does not assure that proffered evidence will be received. The trial court may exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Rule 403, W.R.E.

Rule 404, W.R.E., then sets forth the common law rule that evidence of a person's character or trait of character generally is not sufficiently relevant to justify its admission, without a balancing by the trial court of probative value against countervailing considerations. C. McCormick, McCormick on Evidence § 186 at 549–550 (3d ed. 1984). Rule 404(a), W.R.E., encompasses specific exceptions when the character of the accused, the victim or a witness is in issue. Rule 404(b) explicates the concept that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. The second sentence of that paragraph provides, however, that evidence of other crimes, wrongs or acts may be admissible for other purposes, setting forth examples.

In applying these rules, this court consistently has approved the legitimate use of evidence of prior bad acts when offered for a permissible purpose. *Brown v. State*, supra; *Story v. State*, Wyo., 721 P.2d 1020, cert. denied — U.S. —, 107 S.Ct. 459, 93 L.Ed.2d 405 (1986); *Carey v. State*, Wyo., 715 P.2d 244, cert. denied — U.S. —, 107 S.Ct. 270, 93 L.Ed.2d 247 (1986); *Bishop v. State*, supra. It is clear that evidence admissible under Rule 404(b) often tends to implicate the character of the accused, but if the evidence properly is offered for a purpose which is permissible in the light of Rules 402 and 404(b), then it is not excludable simply because it does implicate the character of the accused. *Kwallek v. State*, Wyo. 596 P.2d 1372 (1979).

On occasion, we have noticed the difficulty confronting a trial court in the proper

2. The process which is suggested below appears to be compatible with that invoked in the federal courts. Several recent federal cases discuss a very similar approach. See, e.g., *U.S. v. Soundingsides*, 820 F.2d 1232 (10th Cir.1987); *Woodruff v. Lane*, 818 F.2d 1369 (7th Cir.1987); *U.S. v. Gruttadauro*, 818 F 2d 1323 (7th Cir.1987); *U.S. v. Leight*, 818 F.2d 1297 (7th Cir.1987); *U.S. v. Cintolo*, 818 F.2d 980 (1st Cir.1987).

application of these rules, and it is a matter of concern. That difficulty can be eased by this sequential process. The proponent of the evidence must assume the burden of satisfying the trial court that the evidence is admissible for some purpose other than proving the character of a person in order to show that he acted in conformity with his character. This is a special rule of relevancy demanding that the proponent satisfy the trial court that the evidence does make more probable, than it would be without the evidence, the existence of a fact of consequence in the determination of the action, and the evidence comes within the other purposes of Rule 404(b), W.R.E. Assuming that the proponent satisfies the trial court under this relevancy standard, the trial court must determine whether the probative value of the proffered evidence is outweighed substantially by the factors articulated in Rule 403, W.R.E. Normally, this involves a claim of unfair prejudice by the party objecting. While *Apodaca v. State*, Wyo., 627 P.2d 1023 (1981), appears to impose upon the objector the obligation to demonstrate that it had little or no probative value and that it was extremely inflammatory or introduced for the purpose of inflaming the jury, *Key v. State*, Wyo., 616 P.2d 774 (1980), relied upon in *Apodaca v. State*, supra, makes it clear that the standard is one imposed in the appellate court upon review of the trial court's ruling admitting evidence. In addressing the issue before the trial court, the burden upon the objector is simply that of articulating the factors suggested in Rule 403, W.R.E., and explaining the objector's theory with respect to unfairness.

The Wyoming Rules of Evidence were not in effect when *Peterson v. State*, Wyo., 586 P.2d 144 (1978), was tried in the district court. In reviewing that case this court said that if the relevancy standard is met, certain counterbalancing factors might cause the court to exclude the evidence if those factors should outweigh the probative value. In that case, the court relied upon C. McCormick, Handbook of the Law of Evidence at 438–439 (2d ed. 1972), in adopting the counterbalancing factors of first, "the danger that the facts offered may unduly arouse the jury's emotions of prejudice, hostility or sympathy;" and "second, the probability that the proof and the answering evidence that it provokes may create a side issue that will unduly distract the jury from the main issues." *Peterson v. State*, supra, at 155. That view was held to be consistent with Rule 403, W.R.E. The remaining factors found in Rule 403, W.R.E., however, should not be ignored by the trial court in balancing the probative value of the proffered evidence against those other factors.

It must be recalled that the court has adhered to the concept of discretion with respect to admissibility of evidence. *Ortega v. State*, Wyo., 669 P.2d 935 (1983); *McCabe v. R.A. Manning Construction Company, Inc.*, Wyo. 674 P.2d 699 (1983); *Hopkinson v. State*, Wyo., 632 P.2d 79 (1981), cert. denied 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982), 464 U.S. 908, 104 S.Ct. 262, 78 L.Ed.2d 246 (1983); *Sanville v. State*, Wyo., 593 P.2d 1340 (1979). The logical review of any exercise of discretion, however, suggests that it is quite important for the trial judge to articulate the reasons for its finding that the probative value is not substantially outweighed by other factors pursuant to Rule 403, W.R.E. *Elliott v. State*, supra.

The application of this process is consistent with what we have said in other instances. In *Goodman v. State*, Wyo., 601 P.2d 178, 183, n. 7 (1979), we commended an approach adopted from J. Weinstein and M. Berger, 2 Weinstein's Evidence, ¶ 404[10] at 404–73—404–74 (1978), and we said:

> "* * * It is suggested that such evidence be ruled inadmissible unless it can be shown by the prosecution that it is essential to the proof of an element of the crime allegedly committed by the accused and, indeed, that its use in this sense not be merely cumulative. This rule of necessity has been adopted or hinted at before in the authorities. It admittedly involves some degree of judicial discretion, but a much narrower degree than has been employed heretofore, and the general rule will be one of exclu-

sion. The rule proposed will not solve all of the problems confronting an accused in this area, but it will bring him substantially closer to Cardozo's ideal that the defendant before the bar of justice start life anew; it will lend more meaning to the presumption of innocence now reduced statistically to something approaching a cliche, and it will render more than lip service to the currently unique but significant policies undergirding a privilege [against self-incrimination] that analytical arguments cannot cast aside. * * *.

"* * * 'The trial judge must have wide discretion to determine whether the probative value of the evidence is outweighed by its prejudicial character.' *Thus the parties must be prepared to convince the trial judge at the time the evidence is offered. Since both sides will probably be aware of the possibility that the issue will arise, it should be adequately briefed before the judge must rule. More important than lists of cases in such a brief is the detailed analysis of the facts to show why the proof of other crimes is needed, why its use may be prejudicial and how some compromise or limitation may protect both parties.*" (Emphasis in original).

What we have said demonstrates that the simple identification of a permissible purpose for which the evidence of prior acts might be offered, other than showing the character of the accused, does not justify admission. The process requires more than that. Following the process will dispose of the vast majority of instances in which the evidence of other wrongs or acts demonstrates opprobrious or repugnant conduct. At a time somewhat removed from its actual ruling on the evidence, the trial court, just prior to instructing the jury, made it clear that in this instance it had substantially adopted the process which we have suggested.

In this instance, however, we also must consider the testimony as evidence of other crimes. What Ms. Nielson described would certainly be a violation of § 6-6-103, W.S. 1977, which makes threatening telephone calls a high misdemeanor. Arguably, it would fall afoul of § 6-2-402, W.S.1977, defining the crime of blackmail in Wyoming. Treated as evidence of other crimes, we believe the correct approach is appropriately summarized in C. McCormick, McCormick on Evidence, supra, § 190 at 565:

"* * * [M]ost recent authority recognizes that the problem is not merely one of pigeonholing, but of classifying and then balancing. In deciding whether the danger of unfair prejudice and the like substantially outweighs the incremental probative value, a variety of matters must be considered, including the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse a jury to overmastering hostility." (Footnotes omitted).

In *Bishop v. State*, supra, 687 P.2d at 246, this court adopted from *United States v. Myers*, 550 F.2d 1036 (5th Cir.1977), appeal after remand 572 F.2d 506 (5th Cir. 1978), cert. denied 439 U.S. 847, 99 S.Ct. 147, 58 L.Ed.2d 149 (1978), a set of factors to apply with respect to evidence of other crimes. Those factors are:

" '(1) The proof of the other similar crimes must be plain, clear, and convincing.

" '(2) The other crimes must not be too remote in time from the charged offense.

" '(3) The evidence of the other crimes must be introduced for a purpose sanctioned by Rule 404(b) of the Federal Rules of Evidence.

" '(4) The element of the charged offense that the evidence of other crimes is introduced to prove must be a material issue in the case.

" '(5) There must be a substantial need for the probative value of the evidence of the other crimes.' *United States v. Myers, supra,* [550 F.2d 1036 (5th Cir. 1977) ] at 1044-1045. See also Louisell & Mueller, Rule 404, § 140 (1978)."

In *Story v. State,* supra, 721 P.2d at 1032, we held that the test articulated in Bishop did not control the trial court's discretion under Rule 403, W.R.E. and "[i]n its broad discretion a trial court might find one of the factors is unsatisfied and still admit the evidence under Rule 404(b)." In most instances, those factors will be present when evidence of other crimes is properly admissible.

In our decisions, we have addressed those factors in a number of contexts. The first factor requiring plain, clear and convincing proof of the other crime is discussed in *Bishop v. State,* supra. See also 2 D. Louisell and C. Mueller, Federal Evidence § 140 at 182 and cases cited in n. 22, at 182–186 (1985). The second factor of remoteness from the crime charged in the case being tried has been treated in *Crozier v. State,* Wyo., 723 P.2d 42 (1986); *Goodman v. State,* supra; and *Elliott v. State,* supra. The third factor of a permissible purpose for admission, even though it is not one enumerated in Rule 404(b), W.R.E., has been analyzed in *Brown v. State,* supra; *Crozier v. State,* supra; *Story v. State,* supra; *Carey v. State,* supra; *Evans v. State,* Wyo., 655 P.2d 1214 (1982); *Hopkinson v. State,* supra; *Vasquez v. State,* Wyo., 623 P.2d 1205 (1981). The fourth factor requires the evidence be relevant in that it demonstrates an element of the crime or facts from which an inference can be drawn demonstrating an element of the crime, and it is discussed in *Scadden v. State,* Wyo., 732 P.2d 1036 (1987); *Carey v. State,* supra; *Young v. State,* Wyo., 678 P.2d 880 (1984); *Hopkinson v. State,* supra; *Grabill v. State,* 621 P.2d 802 (1980); *Goodman v. State,* supra; *Kwallek v. State,* supra. The fifth factor which requires a demonstrable need for the evidence of other crimes and suggests that it should not be cumulative of other evidence that is or could be offered has been addressed in *Crozier v. State,* supra; *Carey v. State,* supra; *Grabill v. State,* supra; *Goodman v. State,* supra.

With respect to evidence of other crimes, the process which we have articulated above would require the proponent to carry the burden of persuading the trial court as to the admissibility of the evidence. See *Brown v. State,* supra, Cardine, J., concurring. Otherwise, the general rule of inadmissibility would control. The proponent then should be able to articulate the admissibility in the context of the factors adopted in *Bishop v. State,* supra, although the trial court in the exercise of its discretion may admit such evidence even though all of the factors are not demonstrated. *Story v. State,* supra. The opponent should then be prepared to address relevancy and the balancing factors in the light of Rule 403, W.R.E. The trial court then should, at least briefly, articulate its finding of relevancy and how it weighed probative value against the countervailing factors. A demonstration on the record that this process has been pursued will provide a proper record from which this court may pursue the question of any abuse of discretion by the trial court in admitting such evidence.

When the Bishop factors are related to this record, it discloses that Ms. Nielson's testimony about the telephone call was clear and convincing. It was not so remote from the offense charged as to foreclose its admission into evidence. It was offered for a permissible purpose to show motive, the state of mind of Coleman, intent, purpose, and a continuing course of conduct. It was material because evidence of motive can lead to an inference of identity which is an element of this crime. That concept is appropriately stated in J. Weinstein and M. Berger, 2 Weinstein's Evidence, supra, § 404[14] at 404–108:

> "Motive has been defined as 'supply[ing] the reason that nudges the will and prods the mind to indulge the criminal intent.' Two evidentiary steps are involved. Evidence of other crimes is admitted to show that defendant has a reason for having the requisite state of mind to do the act charged, and from this mental state it is inferred that he did commit the act." (Footnotes omitted.)

In prior cases, evidence such as this has also been held admissible for purposes of demonstrating a continuing course of conduct. *Scadden v. State,* supra; *Perry v.*

*Vaught,* Wyo., 624 P.2d 776 (1981); *Hatheway v. State,* Wyo., 623 P.2d 741 (1981). With respect to the factor of a demonstrated need which is not merely cumulative of other evidence, as we have indicated, this evidence established motive and a state of mind from which an inference of identity, one of the essential elements of the crime, could be drawn. The evidence was not merely cumulative to the evidence from Coleman's friend about Coleman's threat to slash tires. The testimony about the threat to slash tires was a fact from which an inference as to identity could be drawn. While motive can lead to an inference of identity of the perpetrator of the criminal act, these two reports of statements by Coleman are not simply cumulative because they have a different thrust.

We do not deviate from the proposition that admissibility of evidence properly is to be determined by the trial court which "is in a far better position to evaluate the impact of the evidence, because it has the opportunity to observe the mannerisms and reactions of the witnesses, the defendant, the jurors, and counsel." *Noetzelmann v. State,* supra, 721 P.2d at 581. This court will afford deference to the trial court's decision when an appeal is taken. *Noetzelmann v. State,* supra; *Carey v. State,* supra; *Bishop v. State,* supra; *Hopkinson v. State,* supra. We will not reverse a case on the admission of evidence unless we identify an abuse of discretion properly characterized as an error of law. *Walker v. Karpan,* Wyo., 726 P.2d 82 (1986). If there is a legitimate basis for the trial court's decision as articulated in its analysis of its ruling, we will not find an abuse of discretion. *Noetzelmann v. State,* supra; *Carey v. State,* supra; *Vasquez v. State,* supra.

Even though the foregoing has been accomplished, this evidence still must be evaluated in the context of any danger that it may unduly arouse the jury's emotions or prejudice, hostility or sympathy. *Peterson v. State,* supra. In this instance, the trial court did articulate its rationale considering admissibility. We agree with its conclusion that this testimony did not unfairly prejudice Coleman. While the testimony must be conceded to be prejudicial, its use, in context, would not suggest to any reasonable juror that Coleman ought to be convicted of slashing tires and breaking windshields because he had made the threatening phone call. The trial court acted within its discretion in concluding that the evidence did not unduly arouse the jury's emotions or prejudice or hostility. It did not create a side issue which would unduly distract the jury. We conclude that no error was committed in the admission of this evidence by the trial court.

■ Coleman also argues reversible error arising out of a reference to the pine box testimony by the prosecutor in closing argument. The prosecutor properly argued the significance of the testimony about the pine box. He also said, however:

> "* * * But the Defendant ignored that restraining order and continued to harass and threaten, 'I'm going to put your baby in a pine box rather than have you adopt that baby.'
>
> "That's the flavor of this man. *That's the character of this man.*" (Emphasis added.)

No objection was made to this argument until at a recess following the completion of the prosecution's closing argument when a motion for a mistrial was made by counsel for Coleman.

> "* * * We said in Goodman, and have repeatedly said, that objection should be made at the time of the allegedly prejudicial comment in order that the trial court will have the opportunity to take corrective measures." *Wheeler v. State,* Wyo., 691 P.2d 599, 604 (1984).

Because the defense did not object, the plain error standard is applicable, *Wheeler v. State,* supra. We agree with the trial court that the comment by the prosecutor was objectionable, and had an objection been made, it should have been sustained. We conclude, however, that the error did not result in material prejudice to Coleman, and, in the absence of prejudice, the plain error standard is not met. See *Simmons v. State,* Wyo., 687 P.2d 255 (1984). Further, in response to a motion for a mistrial,

the trial court advised that it would give a limiting instruction if the defense wished, and one was given. We previously have held that limiting instructions can correct possible prejudice. *Bishop v. State,* supra; *Hopkinson v. State,* supra; *Sanville v. State,* supra.

Turning then to the contention that the evidence is not sufficient to support the verdict, we apply the standard that we examine all of the evidence in the light most favorable to the State. *Dangel v. State,* Wyo., 724 P.2d 1145 (1986); *Broom v. State,* Wyo., 695 P.2d 640 (1985). If a reasonable juror could conclude beyond a reasonable doubt that the guilt of the defendant was established, then the evidence is sufficient.

In this instance, the only element of the crime in issue was the identity of Coleman. There was no direct evidence of identity, but that element can be established by circumstantial evidence. *Campbell v. State,* Wyo., 589 P.2d 358 (1979); *Johnson v. State,* Wyo., 562 P.2d 1294 (1977). The circumstantial evidence from which identity could be inferred consisted of Coleman's prior statement that he was considering slashing the victim's tires and no one would be able to prove it; his continuing attitude of hostility directed toward interfering with adoption proceedings evidencing motive; his phone call that he was going to come and pick up the child on the night in which the damage occurred; testimony that he was in the area on that night until 1:30 in the morning which rebutted a hearsay alibi that he was in Evanston; the fact that no one else in the vicinity suffered damage at that time; and the failure to deny the conduct when Ms. Nielson asked him about it. When this evidence is examined in the light most favorable to the State, it justifies the inference of identity and the conclusion that the jury properly found Coleman guilty beyond a reasonable doubt.

The judgment and sentence of the trial court is affirmed.