FOX, Justice.
[¶ 1] A jury convicted Appellant, Chad Christopher Hyatt, of driving under the influence of alcohol (fourth or subsequent offense within ten years), in violation of Wyo. Stat. Ann. § 31-5-233(b)(i). Arguing that the evidence at trial was insufficient to support his conviction, he appeals. We affirm.
ISSUE
[¶ 2] Was there sufficient evidence at trial to support Mr. Hyatt's conviction for driving under the influence (fourth or subsequent offense within ten years)?
FACTS
[¶ 3] At around 10:00 p.m. on October 16, 2016, Chase Stricklin[1] saw a truck driving up and down a field behind his shop in Rock River, Wyoming. According to Chase, the truck, a "brownish" older model Chevrolet, was about 200 to 300 yards away, was "driving really fast and recklessly," was loud and "out of control," and began flashing its lights when it came to rest at the far end of the field. After observing the truck for about ten minutes, Chase called his dad, Rick Stricklin. Chase also testified that after he called his dad, he heard the truck driving around town and then on Highway 30, heading toward Laramie. Chase could not tell anything about the bed length, could not see inside the truck or tell if there was more than one person in the truck, and he did not see the tag number on the license plates.
[¶ 4] Rick testified that he was at his home when Chase called him a little after 10:00 p.m. to tell him what was going on behind the shop. He made a REDDI (Report Every Drunk Driver Immediately) report to the police, got dressed, and went outside to see what was happening. He, too, witnessed an early 1980's brown Chevy truck "going up and down the highway, kind of accelerating, decelerating, accelerating, decelerating, making a lot of noise and whatnot." He testified that the truck "headed north up the highway, then south down the highway. Then it turned off into town, ... going around a couple of blocks, then came back out to the highway ... and headed ... south out of Rock River." After seeing the truck himself, Rick made a second REDDI report to the police to give dispatch a better description of what was going on and where the truck was located. Rick also testified that he thought the *527 truck was "two-tone, but [he could not] say 100 percent certain." Rick explained that there is never much traffic late at night in Rock River and that he might have seen one or two other vehicles that night. He also testified that he was unable to get a license plate number and could not see who was driving or how many people were in the truck.
[¶ 5] Wyoming Highway Patrol Trooper Michael Petruso received a REDDI report at 10:19 p.m. on October 20, 2016, indicating that an older two-tone brown Chevy pick-up was driving through fields in Rock River. Trooper Petruso, who was south of Laramie on Highway 287, headed north toward Rock River on Highway 30. At 10:52 p.m., 33 minutes after the REDDI report was received, Trooper Petruso encountered a two-tone brown Chevy pick-up truck parked off the shoulder and facing south on Highway 30, approximately .4 miles south of Rock River. The truck was not running and Trooper Petruso never saw it in motion.
[¶ 6] Trooper Petruso testified that the truck was registered to Mr. Hyatt. Trooper Petruso approached the driver's side and found Mr. Hyatt sitting in the passenger seat, slouched over but awake. Mr. Hyatt had red, bloodshot eyes and slurred speech. Trooper Petruso observed beer cans on the floor, an open beer can in the center console area, and a strong odor of flavored alcoholic beverage emanating from inside the truck. When Trooper Petruso asked Mr. Hyatt how he was doing, Mr. Hyatt responded with "a couple swear words" and said that he had just run out of gas. Trooper Petruso asked Mr. Hyatt to go back to his patrol car with him and Mr. Hyatt responded, "What are you going to do? Are you going to arrest me for DUI?" and then Mr. Hyatt began to cry.
[¶ 7] After Trooper Petruso asked him multiple times, Mr. Hyatt got out of the vehicle and sat on the tailgate. Trooper Petruso pointed out beer cans in the bed of the truck. When Trooper Petruso asked Mr. Hyatt how he got there, he replied, "I pulled over," explaining that he had run out of gas. Mr. Hyatt stated that he tried to get fuel before he left town and that after he ran out of gas, he pulled his car off the road and had been sleeping there for "roughly an hour and a half." Mr. Hyatt told Trooper Petruso that he did not drink in his truck, and then said that he had been drinking in his truck since the time he stopped. Mr. Hyatt also told Trooper Petruso that a friend of his had walked to Rock River to get some fuel. He could not name the friend, but kept telling Trooper Petruso to "call him up," and when Trooper Petruso said that he did not have his number, Mr. Hyatt did not provide his friend's phone number. Trooper Petruso never asked Mr. Hyatt what direction his friend went or where he went. Trooper Petruso testified that he glanced in the truck, but did not see the keys to the vehicle. However, he did notice that in the "dash underneath the ignition, there were wires just kind of ripped out and the speedometer was all out of whack," which "made it look like maybe this was another way of starting the vehicle" without the keys.
[¶ 8] Mr. Hyatt declined to perform field sobriety tests; Trooper Petruso arrested him and took him to the Albany County Detention Center. Once at the detention center, Trooper Petruso sought a search warrant to obtain a blood sample from Mr. Hyatt. After the warrant issued, Mr. Hyatt agreed to provide a breath sample, which was taken at 12:34 a.m. on October 21 and returned a result of 0.116% blood alcohol concentration.
[¶ 9] The State charged Mr. Hyatt with driving while under the influence, his fourth offense within ten years, in violation of Wyo. Stat. Ann. § 31-5-233(b)(i), (e), a felony. After trial, the jury returned a guilty verdict on the charge of driving under the influence. The State then presented evidence of Mr. Hyatt's previous driving under the influence of alcohol convictions, and the jury made a supplemental finding that Mr. Hyatt had three previous convictions for driving under the influence of alcohol within ten years of October 20, 2016. The district court sentenced Mr. Hyatt to six to seven years' incarceration. Mr. Hyatt timely appeals.
STANDARD OF REVIEW
[¶ 10] When we review a claim of insufficiency of the evidence, we "examine *528 and accept as true the State's evidence and all reasonable inferences which can be drawn from it." Villarreal v. State , 2017 WY 81, ¶ 26, 398 P.3d 512, 520 (Wyo. 2017) (citing Bean v. State , 2016 WY 48, ¶ 44, 373 P.3d 372, 386 (Wyo. 2016) ). "We do not consider conflicting evidence presented by the defendant." Bean , ¶ 44, 373 P.3d at 386 (citations omitted). And, we "do not substitute our judgment for that of the jury." Id . Instead, we "determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt." Id ."This standard applies whether the supporting evidence is direct or circumstantial." Id . (citing Guerrero v. State , 2012 WY 77, ¶ 14, 277 P.3d 735, 738-39 (Wyo. 2012) ).
We do not consider "whether or not the evidence was sufficient to establish guilt beyond a reasonable doubt, but [instead] whether or not the evidence could reasonably support such a finding by the factfinder." Hill v. State , 2016 WY 27, ¶ 13, 371 P.3d 553, 558 (Wyo. 2016) (citing Levengood v. State , 2014 WY 138, ¶ 12, 336 P.3d 1201, 1203 (Wyo. 2014) ). "We will not reweigh the evidence nor will we re-examine the credibility of the witnesses." Hill , 2016 WY 27, ¶ 12, 371 P.3d at 558 (citation omitted). We review the sufficiency of the evidence "from this perspective because we defer to the jury as the fact-finder and assume they believed only the evidence adverse to the defendant since they found the defendant guilty beyond a reasonable doubt." Oldman [v. State ], 2015 WY 121, ¶ 5, 359 P.3d [964,] 966 [ (Wyo. 2015) ].
Id . at ¶¶ 45, 373 P.3d at 387.
DISCUSSION
[¶ 11] Wyo. Stat. Ann. § 31-5-233(b)(i) (LexisNexis 2017) provides that "[n]o person shall drive or have actual physical control of any vehicle within this state if the person ... [h]as an alcohol concentration of eight one-hundredths of one percent (0.08%) or more." Mr. Hyatt contends that the evidence was not sufficient to support his conviction under that statute. He asserts there was insufficient evidence to show (1) that his truck was the same truck identified in the REDDI report; (2) that he was driving the truck; and (3) that he was under the influence of alcohol at the time he was driving the truck, if he was driving the truck. We address each argument in turn.
[¶ 12] Mr. Hyatt first argues that, when viewed in the light most favorable to the State, there was insufficient evidence to show that his truck was the same truck that was identified in the REDDI report. He contends that Chase did not have a clear view of the truck because he only "observed a 'brownish' Chevy truck from a distance of over 200 yards." He asserts that Rick's testimony was no more definite because he testified that he saw "an '80's model brown Chevy truck accelerating and decelerating." He contrasts that evidence with the fact that his truck, while it was an 1980's model Chevrolet, was two-toned, not just brownish. He also emphasizes Rick's testimony that he saw two other vehicles on the road that night and argues that either one of those vehicles could have been the subject of the REDDI reports. Mr. Hyatt concludes that, based upon this evidence, the State did not prove his truck was the truck that was the subject of the REDDI report, and therefore, the State could not establish that he was operating his truck in a manner consistent with intoxication.
[¶ 13] We do not find this argument persuasive. Both Chase and Rick described a "brownish" 1980's Chevrolet pickup as the subject of the report; Rick testified that he thought it was "two-tone, but [he could not] say 100 percent certain." Mr. Hyatt's truck was a 1980's model Chevrolet two-toned, brown and tan, pickup. Both Chase and Rick testified that they last saw the truck heading south on Highway 30, out of Rock River; Trooper Petruso located the truck south of Rock River on the shoulder of Highway 30; and Mr. Hyatt told Trooper Petruso that he had come from town. When examined in the light most favorable to the State, this evidence was sufficient for a jury to reasonably conclude that Mr. Hyatt's truck was the same truck that was the subject of the REDDI reports.
[¶ 14] Mr. Hyatt next argues that the State produced insufficient evidence for a *529 reasonable jury to find that he was driving the truck, relying upon Snell v. State , 2014 WY 46, 322 P.3d 38 (Wyo. 2014). In Snell , a witness observed a pick-up truck lose control and roll over. Id . at ¶ 3, 322 P.3d at 40. He saw someone crawl out of the vehicle and run from the scene. Id . After running the license plate number, the investigating officers went to the home of the vehicle's owner, who told them that the vehicle had been parked in her garage and that her son could have taken it. Id . at ¶¶ 4-5, 322 P.3d at 40. The officers continued to look for the driver and, approximately two hours after the accident, encountered Mr. Snell, the owner's son, who resembled the description provided by the witness, smelled of alcohol, and had torn clothing and fresh cuts on his face and arms, but denied driving the truck. Id . at ¶ 5, 322 P.3d at 40. The officers sought a search warrant to obtain a sample of Mr. Snell's blood to determine its alcohol content, and Mr. Snell was ultimately charged with violating Wyo. Stat. Ann. § 31-5-233(b)(i), (e), the same statute at play in this case. Id . at ¶¶ 7-8, 322 P.3d at 40. Before trial, Mr. Snell filed a motion to suppress the results of the blood alcohol test, asserting that the search warrant was based upon conclusory statements contained in the officer's affidavit. The district court denied the motion and, after he was convicted, Mr. Snell appealed that decision. Id . at ¶¶ 8-9, 322 P.3d at 40-41. The affidavit in question stated that Mr. Snell was the driver of the vehicle, but never informed the judge granting the warrant how the officer knew that Mr. Snell was the driver of the vehicle. Id . at ¶ 15, 322 P.3d at 43. Holding that the affidavit was insufficient to establish probable cause for a search warrant, we reversed. Id . at ¶¶ 15-22, 322 P.3d at 43-46.
[¶ 15] Mr. Hyatt asserts that the facts in his case are "considerably weaker" than the facts in Snell because neither the REDDI reports nor the witnesses could provide a description of the driver of the truck, and that, therefore, a rational jury could not conclude that he was driving the vehicle on the night in question. Mr. Hyatt, however, overlooks the significant difference in procedural posture and standard of review between the two cases. Our review of the sufficiency of an affidavit to establish probable cause is de novo. Id . at ¶ 10, 322 P.3d at 41. Thus, in Snell , we reviewed the affidavit to determine whether there was "sufficient information within its four corners for a judicial officer to make an independent judgment that there is probable cause to issue the warrant...." Id . at ¶ 13, 322 P.3d at 41. We concluded that the facts contained in the form affidavit were insufficient to establish a nexus between the crime and Mr. Snell because it "repeatedly assert[ed] that [Mr. Snell] was the driver of the vehicle but omit[ted] any explanation as to how [the officer] or a judicial officer could reach that conclusion." Id . at ¶ 17, 322 P.3d at 44. However, we acknowledged that the sequence of facts laid out in the post-arrest affidavit led to the "reasonable conclusion that [Mr. Snell] was driving," and recognized that the record reflected additional facts that would have supported a finding of probable cause, had they been contained in the affidavit. Id . at ¶¶ 19 & 22, 322 P.3d at 45, 46.
[¶ 16] In contrast, our standard of review in this case requires us to "accept as true the State's evidence and disregard any conflicting evidence presented by" Mr. Hyatt to determine whether there was sufficient evidence for a reasonable jury to conclude that Mr. Hyatt was the driver. Barrowes v. State , 2017 WY 23, ¶ 19, 390 P.3d 1126, 1129 (Wyo. 2017). Mr. Hyatt argues that there was no evidence he was the driver of the truck that was the subject of the REDDI reports. "Identification does not have to be proven by a witness positively identifying the accused in court; circumstantial evidence from which identity can be inferred is sufficient." Craft v. State , 2013 WY 41, ¶ 16, 298 P.3d 825, 830 (Wyo. 2013) (citing Coleman v. State , 741 P.2d 99, 107 (Wyo. 1987) ; Campbell v. State , 589 P.2d 358, 368 (Wyo. 1979) ). The evidence shows that Mr. Hyatt was found on the passenger side of the bench seat in the truck, parked on Highway 30, just south of Rock River. The record also contains evidence that Mr. Hyatt made statements consistent with driving the vehicle. For example, he told Trooper Petruso that "he pulled over because he ran out of gas," and when Trooper Petruso asked him how he got there, he replied, "I pulled over." A rational jury could *530 find, based upon this evidence, that Mr. Hyatt was the driver of the vehicle.
[¶ 17] Even if our standard of review permitted consideration of Mr. Hyatt's statements indicating that his friend was driving, it would be unavailing. It was within the jury's purview to discount or even disregard that testimony. It "is the jury's responsibility to resolve conflicts in the testimony, weigh the evidence, and draw reasonable inferences from the facts." Conine v. State , 2008 WY 146, ¶ 5, 197 P.3d 156, 159 (Wyo. 2008) ; see also Widdison v. State , 2018 WY 18, ¶ 21, 410 P.3d 1205, 1213 (Wyo. 2018). Mr. Hyatt never gave officers his friend's name or phone number, could not tell them which direction he went, nor did he provide any other details. Additionally, an officer sent to check out that story located no one. Finally, Trooper Petruso observed loose wiring consistent with an alternative method for starting the truck, which could explain why no key was located. Accordingly, the jury could have reasonably concluded that Mr. Hyatt was the driver of the vehicle.
[¶ 18] Mr. Hyatt's final argument is that the State presented insufficient evidence to establish that he was under the influence of alcohol at the time he was driving the truck. Mr. Hyatt contends that the State presented no evidence that would indicate that he was over the 0.08% intoxication level prior to the time the truck was parked on the side of Highway 30. He claims that "[a]t best, the State proved that [he] was under the influence of alcohol (0.08% blood alcohol concentration or higher) when Trooper Petruso encountered him-more than thirty (30) minutes after the REDDI report was called in," and argues that the only rational conclusion was that he became intoxicated at some point in time prior to Trooper Petruso's initial contact with him, but was not necessarily intoxicated while driving the truck.
[¶ 19] The evidence presented at trial reveals: Trooper Petruso located Mr. Hyatt at 10:52 p.m., 33 minutes after receiving the REDDI report and conducted Mr. Hyatt's breath test 1 hour and 42 minutes after that. Moss Kent, the forensic toxicologist called by the State, calculated that the amount of alcohol processed by Mr. Hyatt's system between the time Trooper Petruso found Mr. Hyatt and his breath test could have ranged between .017 (the amount a novice drinker would process) and .0476 (the amount a heavy drinker would process). That would mean Mr. Hyatt's blood alcohol content at the time Trooper Petruso encountered him at 10:52 p.m. was between 0.127 and 0.1576. Mr. Kent testified that at the time of the REDDI reports, Mr. Hyatt's blood alcohol content would have been between 0.1325 and 0.1437, if he did not consume any alcohol between that time and the time Trooper Petruso found him. Mr. Kent also explained that it takes time for alcohol to be absorbed into the bloodstream and that it "usually takes 45 minutes, thereabouts, maybe an hour for somebody to ... absorb their last drink." Both Trooper Petruso and Corporal Houston, a second officer responding to the REDDI report, testified that when they encountered Mr. Hyatt, he showed signs of intoxication, including slurred speech, bloodshot eyes, emotional behavior, and the smell of alcohol. When evaluated in the light most favorable to the State, the jury could have reasonably inferred that this evidence established Mr. Hyatt drank before he ran out of gas and pulled to the side of the road and that his blood alcohol content exceeded 0.08% at that time. This conclusion, taken in concert with the evidence that Mr. Hyatt's truck was being driven recklessly through Rock River, was sufficient to allow the jury to reasonably conclude that Mr. Hyatt was legally intoxicated and driving his truck at the time the REDDI report was made.
CONCLUSION
[¶ 20] The State's evidence sufficiently supported its charge that Mr. Hyatt drove under the influence of alcohol (fourth or subsequent offense within ten years), in violation of Wyo. Stat. Ann. § 31-5-233(b)(i). Consequently, we affirm his conviction.

Chase Stricklin and his father, Rick Stricklin, both testified at the trial. To avoid confusion, we will refer to them by their first names.