2012 WY 77

**Francis Xavier GUERRERO, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–10–0263.**

Supreme Court of Wyoming.

May 31, 2012.

Representing Appellant:  Diane E. Courselle, Director, and Brian Quinn, Student Intern, Defender Aid Program, University of Wyoming College of Law. Argument by Mr. Quinn.

Representing Appellee:  Gregory A. Phillips, Attorney General; David L. Delicath, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Justin A. Daraie, Assistant Attorney General. Argument by Mr. Daraie.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Appellant, Francis Xavier Guerrero, challenges his conviction of felony larceny in violation of Wyo. Stat. Ann. § 6–3–402(a). He claims the district court erroneously instructed the jury on the elements of larceny. He also contends that the evidence presented at trial was insufficient to support his convic-

tion. We conclude the evidence was insufficient to sustain the conviction and, accordingly, reverse.

### ISSUES

[¶ 2] Appellant raises the following issues:

1. Was the jury properly instructed on the elements of felony larceny?
2. Was there sufficient evidence to support the conviction of felony larceny?

The State presents the issues as follows:

1. Did the district court commit plain error when it omitted the phrase "took and carried away" from the jury instruction setting out the elements of larceny?
2. Did the prosecution produce sufficient evidence of caption and asportation to sustain Guerrero's larceny conviction beyond a reasonable doubt?

### FACTS

[¶ 3] Appellant was employed as a server at the Tortilla Factory restaurant in Cheyenne from August, 2006 to November, 2008. Servers at the restaurant are required to use the restaurant's computers to enter food orders and generate customer checks. Each server uses a unique two-digit code to log into the computers' cashier program, which keeps track of a server's total amount of sales, number of food items sold, voided orders, and discounts issued during a shift. Discounted and voided orders must be approved by a restaurant manager and entered into the computer using a manager's five-digit code. Because the computers do not hold cash, Appellant and the other servers at the restaurant were required to hold money received from cash-paying customers until the end of a shift. When a server's shift was over, the server would print out an individualized server report from the restaurant's computer system and turn over an amount of cash, checks, and credit card receipts equaling the server's total amount of sales, less any voids and discounts, as reflected on the server report.

[¶ 4] On November 14, 2008, as Appellant was logging into the restaurant computer's cashier program, another employee at the Tortilla Factory observed Appellant enter a four- or five-digit code into the program, which was represented by four or five asterisks on the computer screen. This attracted the employee's notice because all of the servers at the restaurant were identified by two-digit codes, and only restaurant managers logged into the computer using five-digit codes. When Appellant saw the employee standing behind him, he cleared the transaction and positioned himself so that the employee could no longer see the screen.

[¶ 5] On the following day, the employee described the incident to her supervisor, Isabell Tapia, who managed the restaurant with her brothers, Sam and Martin Tapia. At the end of the day, when Appellant handed in his server report, Ms. Tapia noticed an abnormally large number of voids and discounts on the report. Seven other servers worked on November 15, and twenty-three orders were voided that day. Appellant's server report indicated that he had voided nineteen of those orders. Similarly, a total of thirty-seven discounts were entered that day, and thirty-four were attributed to Appellant. Ms. Tapia had been the only manager on duty during Appellant's shift, and she had not approved any of Appellant's voids or discounts.

[¶ 6] After noticing the large number of voids and discounts, Ms. Tapia retrieved Appellant's server reports for the entire week, all of which showed voids and discounts that had not been approved by Ms. Tapia, who had been the manager on duty during Appellant's shifts. Later that evening, Ms. Tapia told her parents, the owners of the Tortilla Factory, about the activity on Appellant's server reports. On the following day, Sam and Martin Tapia accessed historical records of Appellant's server reports and discovered that significantly more voids and discounts had been attributed to Appellant than to all of the other servers combined. The inordinate number of voids and discounts had apparently gone unnoticed for over two years during Appellant's employment as a server at the restaurant, despite the fact that the restaurant managers carefully scrutinized the server reports of other employees during the

same period. The server records indicated that Appellant had used Sam's manager code to enter voids and discounts on days when Sam was not working.

[¶ 7] The Tapias subsequently contacted law enforcement. Following an investigation, the State filed an Information charging Appellant with felony larceny under Wyo. Stat. Ann. § 6–3–402(a) (LexisNexis 2007). The Information alleged that Appellant "[d]id unlawfully steal, take and carry, lead or drive away property of another with intent to deprive the owner or lawful possessor, and the value of the property is one thousand dollars ($1,000.00) [o]r more, to wit: did unlawfully take money, the property of the Tortilla Factory with intent to deprive Tortilla Factory...."

[¶ 8] In preparation for trial, the State and the defense submitted proposed jury instructions setting forth the elements of larceny. Appellant proposed that the jury be required to find that he "[s]tole, took and carried, led or drove away" property of another with intent to deprive, echoing the language of Wyo. Stat. Ann. § 6–3–402(a). The State submitted a proposed instruction requiring the jury to find that Appellant "took" property of another. The district court, however, drafted an instruction that would require the jury to find that Appellant "took and carried away" property of another. At the jury instruction conference, the district court altered its proposed jury instruction by substituting "stole" for "took and carried away." Appellant initially objected to the modification, but subsequently withdrew the objection.[1]

[¶ 9] At trial, the State contended that Appellant had been voiding and discounting customer orders without the customers' knowledge, and retaining the difference between the full prices paid by the customers and the discounted prices reflected on Appellant's server reports. The State presented testimony from several witnesses, including Isabell and Sam Tapia, as well as documentary evidence showing Appellant's server records for the entire duration of his employ-ment as a server at the Tortilla Factory, to prove its case. Appellant's server records showed that, on many days during 2008, the number of voids and discounts attributable to Appellant surpassed the total entered by all other servers working on those days. For example, on May 3, 2008, 23 discounts and 21 voids were attributed to Appellant, while all other employees working that day entered a total of one discount and two voids. The value of Appellant's discounts and voids amounted to $68.27 on May 3. Similarly, on August 16, 2008, 41 discounts and 25 voids were attributed to Appellant, while all other employees entered a total of seven discounts and five voids. The value of Appellant's discounts and voids on August 16 was $75.83. In total, the voids and discounts attributable to Appellant in 2008 amounted to $7,223.38. The evidence also indicated, however, that the restaurant computer's cashier program allowed managers to alter or amend customer checks after they had been entered in the computer.

[¶ 10] At the conclusion of the State's case-in-chief, Appellant moved for a judgment of acquittal on the grounds that the State had failed to establish "that any money was actually taken from the restaurant." Appellant also argued that "The state has charged [the crime] as a larceny, not a[s] larceny by bailee, and the fourth element of that larceny is took and carried away." The court ruled that the State had presented sufficient circumstantial evidence to establish the elements of larceny and allowed the trial to continue. After being instructed, the jury deliberated and returned a guilty verdict.

[¶ 11] The district court sentenced Appellant to three to five years of imprisonment, and suspended that term of incarceration in favor of seven years of supervised probation. Appellant did not initially appeal his conviction and sentence, but subsequently petitioned this Court for a Writ of Certiorari to reinstate his right to take a direct appeal. We granted the petition in part and remanded the matter to the district court with instructions to hold a hearing on wheth-

---

1. The record does not explain why the court changed its proposed instruction or why Appel-lant withdrew his objection to the change.

er Appellant's trial counsel was ineffective in failing to perfect a timely appeal. After a hearing, the district court concluded that Appellant's counsel was ineffective. Upon review of the district court's decision, we granted Appellant's petition in full and restored Appellant's right to appeal from the judgment. This appeal followed.

### DISCUSSION

[¶ 12] Appellant was convicted of felony larceny under Wyo. Stat. Ann. § 6–3–402(a). In order to place the following discussion in context, we begin by noting that the crime of larceny, in its ordinary form, is separate and distinct from the crime of larceny by bailee under Wyoming statute, notwithstanding the fact that the crimes share the same statutory appellation.[2] The crimes are separately defined in Wyo. Stat. Ann. § 6–3–402 as follows:

§ 6–3–402. **Larceny; livestock rustling; theft of fuel; penalties.**

(a) A person who steals, takes and carries, leads or drives away property of another with intent to deprive the owner or lawful possessor is guilty of larceny.

(b) A bailee, a public servant as defined by W.S. 6–5–101(a)(vi) or any person entrusted with the control, care or custody of any money or other property who, with intent to steal or to deprive the owner of the property, converts the property to his own or another's use is guilty of larceny.

. . .

[¶ 13] In Appellant's first issue, he contends that the district court erred in failing to include the elements of "taking" and "carrying" in the jury instruction setting forth the elements of larceny. At trial, the district court instructed the jury that in order to convict Appellant, it must find that the following elements had been established beyond a reasonable doubt:

1. On or between January 1st, 2006 and November 17th, 2008;

2. In Laramie County, Wyoming

3. The Defendant, Francisco Xavier Guerrero

4. *Stole;*

5. Property of another, money belonging to the Tortilla Factory, of a value greater than One thousand dollars ($1,000.00);

6. With intent to deprive Tortilla Factory, the owner or lawful possessor.

(Emphasis added.) Because Appellant did not object to the jury instruction at trial, both parties evaluate the instruction under a plain error analysis, as directed by our decision in *Granzer v. State,* 2008 WY 118, ¶ 9, 193 P.3d 266, 269 (Wyo.2008) (To demonstrate plain error an appellant must show (1) the record clearly reflects the incident urged as error, (2) a violation of a clear and unequivocal rule of law, and (3) that the appellant was materially prejudiced by the denial of a substantial right.). The parties do not dispute that the alleged error is clearly identified in the record. Further, in light of our precedent holding that "taking" and "carrying" are elements of larceny, the State concedes that the omission of these elements from the jury instructions violated an unequivocal rule of law. *See, e.g., Jones v. State,* 2011 WY 114, ¶ 15, 256 P.3d 527, 533 (Wyo.2011); *Javorina v. State,* 2008 WY 35, ¶ 15, 180 P.3d 205, 208–09 (Wyo.2008); *Mendicoa v. State,* 771 P.2d 1240, 1243–44 (Wyo. 1989); *Repkie v. State,* 583 P.2d 1272, 1273 (Wyo.1978); *Murdock v. State,* 351 P.2d 674, 678 (Wyo.1960). According to the State, however, the error did not cause prejudice to Appellant because the evidence of Appellant's guilt was "overwhelming." *See Granzer,* ¶ 13, 193 P.3d at 270–71.

[¶ 14] We need not decide whether the instructional error was prejudicial to Appellant, however, because we find that Appellant's second issue, regarding the sufficiency of the evidence, is dispositive. In reviewing the sufficiency of the evidence, we apply the following standard of review:

[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do

---

2. Wyo. Stat. Ann. § 6–3–402(d) provides that "Conduct denoted larceny in this section constitutes a single offense embracing the separate crimes formerly known as larceny, larceny by bailee or embezzlement."

not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial.

*Anderson v. State,* 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo.2009).

[¶ 15] In determining whether the evidence was sufficient to convict Appellant of larceny under Wyo. Stat. Ann. § 6–3–402(a), we look to the meaning of the taking, or "caption," and carrying, or "asportation," elements of larceny as established under common law and Wyoming precedent. At common law, larceny was committed when one person misappropriated another's property by means of taking it from his possession without his consent. 3 Wayne R. LaFave, *Substantive Criminal Law* § 19.1(a), at 57 (2d ed. 2003). "The principal factor which limited the scope of larceny was the requirement that the thief must take it from the victim's possession; larceny requires a 'trespass in the taking,' as the matter is often stated." *Id.; see also* 50 Am.Jur.2d *Larceny* § 3, at 15 (2006) ("Larceny is an offense against a person's right of property, or, stated alternatively, a criminal trespass upon the right of possession.") (footnote omitted). As the common law developed, the crime of larceny was expanded to encompass a broader range of misappropriations, but the rule limiting larceny to "trespassory" takings was retained. LaFave, § 19.1(a), at 57. Larceny's requirement of a "trespass in the taking" meant that "one, [who was] already in lawful possession of another's property, who converted it to his own use with intent to deprive the owner of it, committed no trespass in the taking and so could not be guilty of larceny." *Id.,* § 19.6(a), at 99.

[¶ 16] In order to close the loophole in the definition of larceny, caused by incorporation of the element of trespass, embezzlement and larceny by bailee statutes were enacted to criminalize the misappropriation of property by a person entrusted with that property. *Id.; see also State v. Weaver,* 359 N.C. 246, 252–53, 607 S.E.2d 599, 602–03 (N.C.2005) (noting that the crime of embezzlement was created by statute "to ensure uniform results in similar cases by extending the common law of larceny to most circumstances in which the defendant initially came to possess the stolen property without trespass," and that "no subsequent enactment vitiated the distinction that the embezzlement statute criminalized non-trespassory takings and larceny remained the proper action in all other cases"); *see also State v. Russell,* 265 S.W.2d 379, 380 (Mo.1954) (noting that embezzlement statutes were created "to obviate defects in the law of larceny for the misappropriation of another's property without a trespass"). Unfortunately, as one well-respected treatise on criminal law has recognized, the legislative solution has had unintended consequences:

> [T]he fact ... that the borderlines between the three crimes [of larceny, embezzlement, and false pretenses] are thin and often difficult to draw, gave rise to a favorite indoor sport played for high stakes in our appellate courts: A defendant, convicted of one of the three crimes, claimed on appeal that, though he is guilty of a crime, his crime is one of the other two. Sometimes this pleasant game was carried to extremes: A defendant, charged with larceny, is acquitted by the trial court (generally on the defendant's motion for a directed verdict of acquittal) on the ground that the evidence shows him guilty of embezzlement. Subsequently tried for embezzlement, he is convicted; but he appeals on the ground that the evidence proves larceny rather than embezzlement. The appellate court agrees and reverses the conviction.

LaFave, § 19.8, at 141 (footnote omitted).

[¶ 17] In response to the difficulties in applying separately defined forms of larceny to misappropriations of property, a majority of states have abolished the distinctions between the various forms of larceny in favor of a single crime, usually referred to as "theft." *See Id.,* § 19.8(c), at 145. Following the Model Penal Code, some state codes define theft as the "exercise of unlawful control over" the property of another. MPC

223.2(1); Ark.Code Ann. § 5–36–103(a); N.J.S.A. § 2C:20–3; 18 Pa.C.S.A. § 3921(a). Nonetheless, in Wyoming, the crimes of larceny and larceny by bailee remain distinct offenses requiring proof of different elements, and we are bound to apply the definitions of these crimes as set forth by our legislature, and as interpreted by Wyoming and common law precedent. *See Stapleman v. State*, 680 P.2d 73, 75 (Wyo.1984) (setting forth the elements of larceny by bailee under former Wyo. Stat. Ann. § 6–7–303 (1977)). With this statutory framework in mind, we turn to the issues presented in this appeal.

■ [¶ 18] The distinction between larceny and embezzlement, namely, the element of lawful possession, was first recognized in Wyoming in the territorial case of *McCann v. United States*, 2 Wyo. 274, 292–93 (1880):

Embezzlement at the common law is the fraudulent misappropriation by a person occupying a fiduciary relation, of portable property which he has received into his possession under it; the misappropriation constitutes a breach of the trust. It is there a misdemeanor in the case of public officers in respect to the property entrusted to them. With that exception it exists, as an offense, altogether by statute; consists of common law embezzlement, applied only to the property and trust, which the statute designates, is an extension of the common law only to those cases. Larceny is the fraudulent taking and carrying away of the personal property of another from his possession. *The offenses are alike, in that they are committed by the tortious taking, without the consent of the party to whom the property belongs; in the former upon the possession of the offender, not involving a trespass; in the latter upon that of the other party, involving a trespass; hence the offenses are radically different; and the facts which constitute the one, cannot be employed to establish the other. The two offenses are legal ideas founded on, and drawn from fixed and peculiar elements of fact.*

(Emphasis added.) The Wyoming Criminal Code has consolidated the crimes of embezzlement under former Wyo. Stat. Ann. § 6–7–310 (1977), and larceny by bailee under former Wyo. Stat. Ann. § 6–7–303 (1977), into a single crime set forth in current Wyo. Stat. Ann. § 6–3–402(b). Nonetheless, as noted above, the crimes of larceny and larceny by bailee remain separate offenses under Wyo. Stat. Ann. § 6–3–402. In recognition of this fact, we have noted that "The law of theft and larceny has been recodified and its language has been simplified, but proof of the specific crime charged must still be made and tested against the beyond-a-reasonable-doubt standard." *Lahr v. State*, 840 P.2d 930, 933 (Wyo.1992). Further, subsequent to the consolidation of the larceny by bailee and embezzlement statutes, we have indicated that the difference between larceny and larceny by bailee is "that to prove unlawful conversion by a bailee the State need not prove a trespassory taking." *Wells v. State*, 613 P.2d 201, 204 (Wyo.1980). Accordingly, in Wyoming, whether the criminal act constitutes a "taking" under Wyo. Stat. Ann. § 6–3–402(a), or a "conversion" under Wyo. Stat. Ann. § 6–3–402(b), remains critical to distinguishing between the crimes of larceny and larceny by bailee.

[¶ 19] We note that the element of lawful possession continues to distinguish a "conversion" from a "taking" in other jurisdictions as well:

The distinction between stealing and conversion turns on how possession is obtained. One who gains possession of property by wrongfully taking it from another steals. *Morissette [v. United States ]*, 342 U.S. [246,] 271[, 72 S.Ct. 240, 254, 96 L.Ed. 288 (1952)]. One who comes into possession of property by lawful means, but afterwards wrongfully exercises dominion over that property against the rights of the true owner, commits conversion. *Morissette*, 342 U.S. at 272, 72 S.Ct. 240; *United States v. May*, 625 F.2d 186, 192 (8th Cir.1980) (quoting Restatement (Second) of Torts § 228). There is no way in which both offenses can be committed by the same person involving the same property at the same time for the simple reason that one cannot wrongfully take property and still come into possession of it in a lawful manner.

*United States v. Hill,* 835 F.2d 759, 764 (10th Cir.1987); *see also Weaver,* 359 N.C. at 256–57, 607 S.E.2d at 605. Thus, in accordance with these principles, it has been held that

> An employee who puts the money he receives from a customer directly in his pocket commits embezzlement, because the employer never has possession; but if he puts the money first in the till and later in his pocket, he commits larceny, since placing the money in the till gives the employer possession—unless he merely drops it in the till by mistake or places it there for only a minute or two before pocketing it.

LaFave, § 19.8(a)(1), at 142.

[¶ 20] We turn, then, to an application of the law to the facts of the present case. At trial, the State presented no evidence to establish that the Tortilla Factory was ever in possession of the money alleged to have been stolen from the restaurant. Rather, the State's evidence, which showed that the restaurant did not have a central register where cash could be deposited, established that the money received by Appellant from the restaurant patrons was never transferred to the Tortilla Factory's possession. Indeed, Ms. Tapia testified that the computer in the restaurant dining room did not have a cash drawer. She stated that "Each [server] collects the cash from the customer, from the guest, and they save it with them until the end of the night and then they break their own change. They collect all the guest checks. They are cashiers themselves." Because the State's evidence did not establish that the money was ever in the restaurant's possession, Appellant's activities could not have constituted a taking under Wyo. Stat. Ann. § 6–3–402(a). Instead, the State's evidence tended to show that Appellant's activities amounted to a conversion under Wyo. Stat. Ann. § 6–3–402(b), but Appellant was not charged with a violation of that statute. As a result, even when the evidence is viewed in the light most favorable to the State, and when all reasonable inferences from the evidence are granted, we cannot conclude that the evidence was sufficient to show that Appellant's activities constituted a taking, as opposed to a conversion, of money belonging to the Tortilla Factory. Consequently, Appellant is entitled to an acquittal on the charge of larceny under Wyo. Stat. Ann. § 6–3–402(a).

[¶ 21] We reverse Appellant's conviction and remand with directions that the district court enter a judgment finding Appellant not guilty of the crime charged.