# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2017-KA-00786-COA

**WILLIE SOLOMAN ROBINSON A/K/A WILLIE**          **APPELLANT**
**S. ROBINSON A/K/A WILLIE ROBINSON**

**v.**

**STATE OF MISSISSIPPI**          **APPELLEE**

| | |
|---|---|
| DATE OF JUDGMENT: | 05/17/2017 |
| TRIAL JUDGE: | HON. LAWRENCE PAUL BOURGEOIS JR. |
| COURT FROM WHICH APPEALED: | HARRISON COUNTY CIRCUIT COURT, FIRST JUDICIAL DISTRICT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: W. DANIEL HINCHCLIFF GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: JEFFREY A. KLINGFUSS |
| DISTRICT ATTORNEY: | JOEL SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 09/25/2018 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE IRVING, P.J., CARLTON AND GREENLEE, JJ.**

**IRVING, P.J., FOR THE COURT:**

¶1. Willie Soloman Robinson was convicted of first-degree arson as a habitual offender following a jury trial in the Circuit Court of Harrison County, Mississippi, First Judicial District. He was sentenced to fifteen years in the custody of the Mississippi Department of Corrections (MDOC). Robinson now appeals, asserting two issues: (1) whether he was wrongly indicted for first-degree arson when the evidence was only sufficient to support an indictment for attempted arson; and (2) whether the verdict was against the weight of the

evidence. For the reasons discussed in this opinion, we reject Robinson's arguments and affirm.

FACTS

¶2. As of March 20, 2015, Robinson had been renting, for about a month, an extra bedroom in Alice Crandle's house in Gulfport, Mississippi. At some point that day, Robinson and Alice got into an argument, and Alice demanded that Robinson move out. Alice testified at trial that as her two adult sons, Damien and Cedric, were helping Robinson move his things out of her house, she heard Robinson say that he was going to burn her house down. Cedric also testified that Robinson told him that he was going to burn the house down. Cedric further testified that Robinson called Robinson's supervisor and told him that he would not be coming in the next day because he would be in jail. Robinson then called his uncle, who picked him up from the house. Cedric maintained that after leaving his mother's house, he saw Robinson and Robinson's uncle at a gas station. Finally, Cedric testified that about forty-five minutes after he saw Robinson at the gas station, Cedric's mother called him and told him that her house was on fire and that he "jumped in [his] car and [] flew to her house" and discovered fire "all along her front porch and on the back door . . . on the side of the house." He used a bucket to douse water on the flames and extinguish the fire before going to find help.

¶3. Alice testified that around 2:00 a.m. on March 21, 2015, she was in bed when she heard Robinson's voice outside her bedroom window. She got out of bed and looked out the window to see flames on both the front porch and at the back of the house, blocking the front

2

and back doors—the only two doors to her home. Alice then called Cedric.

¶4.    Officer Brantley Cumberland with the Gulfport Police Department testified that he was patrolling the area around Alice's house at 2:30 a.m. on March 21, 2015, when he was flagged down by Cedric. Cedric informed Officer Cumberland that his mother's house had been set on fire and led Officer Cumberland to the location. Officer Cumberland testified that, upon arriving, he "observed that there was smoke coming from the porch where it actually appeared that the porch had been set on fire." At this point, the fire "was not actively burning, but there was still [sic] burnt embers still smoking coming from the porch." Officer Cumberland made the following observations with respect to the front porch:

> The porch, which has an Astro Turf[-]type material on it, there were multiple spots on the porch to where it was burnt down to the wood. The front door, you could see the base of the door where it looked as if a fire had been placed at the base of the door. There was charring going up the door. You could observe the roof above the door where it had melted from the high heat from where the fire appeared to have been placed.
>
> * * * *
>
> [Y]ou could clearly see that a fire had been set on the base due to the blackness on the baseboard and the blackness going up to the door, and you could also see where the paint on the door was also charring as well.

Officer Cumberland also noted that the back door "appeared to have also been burned or appeared as if there was a fire that had been put in front of that doors [sic], as well."

¶5.    Cedric testified that after the authorities left Alice's house, he stayed and sat out on the front porch to keep an eye out for Robinson. At some point, he saw Robinson "walking up the street towards [Alice's] house with a [gas] can in his hand." Cedric confronted Robinson about starting the fire, to which Robinson replied, "that's what she deserved."

3

Cedric went inside to call the police, at which point Robinson ran off.

¶6.    Officer Landon Williams with the Gulfport Police Department testified that, around 5:20 a.m. on March 21, 2015, he was patrolling the area near Alice's house when he came across Cedric, who informed him that Robinson had returned to Alice's property.  Cedric led Officer Williams to the house, and Officer Williams testified that upon arriving, he "saw Robinson standing in the middle of the road with the gas can in [his] hand."  At that point, Officer Williams told Robinson to put the gas can—which was "a quarter of the way filled with [a] liquid substance"—on the ground, and Robinson was taken into custody. Additionally, Officer Joey Fore with the Gulfport Police Department testified that he arrived to the scene as Robinson was being taken into custody, and that he smelled gasoline emanating from the gas can.

¶7.    Tim Regan, who was a full-time fire investigator/inspector for the City of Gulfport at the time of the incident, testified that he was called to Alice's house on March 21, 2015. He observed that portions of the house exhibited burning "with irregular shape that was consistent with a[n] ignitable liquid pour."  He maintained that "someone intentionally attempted to ignite several areas of the structure on fire using some type of ignitable liquid in [twelve] different locations."  Investigator Regan collected samples and sent them to the Mississippi Crime Lab for identification.  Jacob Burchfield with the Mississippi Crime Lab testified that an ignitable liquid was detected on the samples and that it was identified as gasoline.

¶8.    Robinson was indicted for first-degree arson as a habitual offender in violation of

Mississippi Code Annotated sections 97-17-1 (Rev. 2014) and 99-19-81 (Rev. 2015). After a jury trial, Robinson was convicted and sentenced, as a habitual offender, to fifteen years in the custody of the MDOC. Judgment was entered on May 18, 2017. Robinson filed a motion for a new trial on May 24, 2017, which was denied, and Robinson timely appealed.

## DISCUSSION

### I.    *Attempt*

¶9.    Robinson argues on appeal that the State failed to present evidence sufficient to show beyond a reasonable doubt that he committed the completed act of arson; rather, according to Robinson, the evidence only supports an attempt to commit arson, and he should have been indicted for such. In response, the State maintains that there was legally sufficient evidence of actual burning to prove first-degree arson and that Robinson was properly indicted.

¶10.    The subsection of the statute under which Robinson was indicted, Mississippi Code Annotated section 97-17-1(1), reads as follows:

> Any person who willfully and maliciously sets fire to or burns or causes to be burned or who aids, counsels or procures the burning of any dwelling house, whether occupied, unoccupied or vacant, or any kitchen, shop, barn, stable or other outhouse that is parcel thereof, or belonging to or adjoining thereto, or any state-supported school building in this state whether the property of himself or of another, shall be guilty of arson in the first degree, and upon conviction thereof, be sentenced to the penitentiary for not less than five (5) nor more than twenty (20) years and shall pay restitution for any damage caused.

Robinson's indictment provides, in pertinent part, that he "did unlawfully, willfully, feloniously[,] and maliciously cause to be burned, a dwelling house." Robinson argues that

the language of section 97-17-1(1) distinguishes "setting fire to" from "actually burning" a structure because "setting fire to" connotes an attempted arson, while "actually burning" connotes the completed act of arson. Robinson asserts that his indictment, which includes the language "cause to be burned," requires him to have committed the completed act of arson, rather than a mere attempt. Robinson maintains that the State failed to prove at trial that his act transcended beyond a mere attempt to commit arson; thus, he asserts that the State did not prove the elements of arson as laid in the indictment.

¶11. We disagree, as we find the evidence sufficient to show or prove that Robinson caused Alice's house to be burned, which constitutes arson in the first degree. Both testimonial evidence and photographic evidence were offered to show that Alice's dwelling was burned and that Robinson was the person who caused her dwelling to be burned. Alice testified that she overheard Robinson threatening to burn her house down. Cedric testified that Robinson told him directly that he was going to burn Alice's house down. Cedric further testified that Robinson actually called Robinson's work supervisor to tell him that he would not be at work the next day because he would be in jail. Alice testified that she heard Robinson's voice outside her window just before she got up and saw the flames outside. The photographs offered into evidence clearly show charring and burning, to the extent that portions of a doormat and an Astro Turf-type material covering the front porch had been burned, revealing the wooden floor underneath. The front door was black with soot. A portion of the roof over the front porch appeared to have warped and melted from the fire's heat. The back door also indicated charring. The State presented evidence that an accelerant, gasoline, was used to

6

start the fire. Cedric testified that he saw Robinson at the gas station before the fire started. Officer Williams testified that he observed Robinson some hours after the fire was put out, standing in the middle of the road near Alice's house holding a gas can. Officer Fore testified that the gas can was filled with a liquid that smelled like gasoline. As such, we find that Robinson was properly indicted for first-degree arson in violation of section 97-17-1(1), and that his actions and the resulting burning transcended beyond a mere attempt to commit arson.

## II. Weight of the Evidence

¶12. Robinson argues that the weight of the evidence does not favor the State, such that he should be granted a new trial. When reviewing whether a conviction in a case is

> contrary to the overwhelming weight of the evidence, we defer to the discretion of the trial judge, and we will not order a new trial unless convinced that the verdict is so contrary to the overwhelming weight of the evidence that to allow it to stand would be to sanction an unconscionable injustice.

*Jackson v. State*, 68 So. 3d 709, 720 (¶37) (Miss. Ct. App. 2011) (internal quotation marks and citations omitted). Due to the overwhelming evidence set forth above, we find no merit to this argument. For these reasons, the judgment of the Circuit Court of Harrison County, First Judicial District, is **AFFIRMED**.

**LEE, C.J., GRIFFIS, P.J., BARNES, CARLTON, FAIR, WILSON, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR.**