# IN THE SUPREME COURT, STATE OF WYOMING

## 2022 WY 89

### APRIL TERM, A.D. 2022

### July 14, 2022

SEBASTIAN MICHAEL ESQUIBEL,

Appellant
(Defendant),

v.

S-21-0285

THE STATE OF WYOMING,

Appellee
(Plaintiff).

*Appeal from the District Court of Converse County*
The Honorable F. Scott Peasley, Judge

*Representing Appellant:*
Dion Custis, Cheyenne, Wyoming.

*Representing Appellee:*
Bridget Hill, Wyoming Attorney General; Jenny L. Craig, Deputy Attorney General; Joshua C. Eames, Senior Assistant Attorney General.

*Before FOX, C.J., and KAUTZ, BOOMGAARDEN, GRAY, and FENN, JJ.*

---

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.**

**KAUTZ, Justice.**

[¶1]   Sebastian Michael Esquibel was convicted by a jury of attempted first-degree arson. He argues the State presented insufficient evidence at trial to support his conviction and the district court plainly erred by allowing a police officer to give an opinion that gasoline is an accelerant.  We affirm.

## ISSUES

[¶2]   Mr. Esquibel raises two issues, which we restate as:

    1.    Was the evidence presented at trial sufficient to support his attempted first-degree arson conviction?

    2.    Did the district court commit plain error by allowing a police officer to testify that gasoline is an accelerant?

## FACTS

[¶3]   On the evening of February 12, 2020, Seth Velasquez was in the basement of his home in Douglas when he heard a "thud."  He went upstairs to investigate and discovered someone had used a brick to break one of his front house windows.  He did not call the police because he believed "it was someone having a bad night."  He returned to the basement and went to sleep.

[¶4]   Early the next morning, on February 13, 2020, Mr. Velasquez was awakened by the "smell of something sweet."  After not finding the source of the smell, he got dressed and left to go to a friend's house.  When he went to get into his car, he noticed the driver's side window was shattered.  He observed a brick in the passenger seat and a plastic bottle in the driver's seat.  This time, he called the police.

[¶5]   Officer Luca Dowd with the Douglas Police Department and Dave Harley, a certified fire investigator with the Wyoming Fire Marshal's Office, responded to the residence.  Officer Dowd observed scorched siding below the broken house window and smelled a "strong odor . . . of something similar to nail polish remover" inside the house and in Mr. Velasquez's vehicle.  Mr. Harley noted the plastic bottle found in Mr. Velasquez's vehicle, as well as the area near the broken house window, had an odor similar to "an acetone-based fingernail polish remover" which, he testified, is flammable.  Based on his observations, Mr. Harley determined someone had poured an ignitable liquid onto the windowsill of the broken window and lit it; the resulting fire had traveled from the windowsill, down the siding, to the ground.  He concluded the fire was intentionally set.

1

[¶6]    After the police and fire investigator completed their investigations, Mr. Velasquez went to his friend's house.  When he returned home later that evening, he noticed a diesel-like smell.  He discovered the odor was coming from an area near a newly broken side window.  He again called the police.

[¶7]    Douglas Police Officer Ben Zwiebel responded to the home.  He testified "there was what smelled to be an accelerant like gasoline" by the broken side window.  He described the smell as "dirty gasoline."  Officer Zwiebel found "the accelerant itself in a liquid form . . . just inside the broken window."  The accelerant had been poured down the wall underneath the window and had landed on items on the floor.  He also observed accelerant splatter on the snow just outside the window.  Officer Zwiebel noticed blood on the broken window glass and blinds; the blood was still wet.  He collected the blood and accelerant as evidence.  The accelerant was not tested because the Wyoming State Crime Lab does not test accelerants.  Once Mr. Esquibel became a suspect, Officer Zwiebel obtained his DNA via a buccal swab.  Testing of the blood from the broken glass and blinds revealed a DNA profile consistent with Mr. Esquibel's.  The lab technician testified it was "19.6 quintillion times more likely if [the DNA profile] is from [Mr.] Esquibel than if it is from an unrelated, unknown individual . . . ."

[¶8]    Upon learning of these test results, Officer Dowd interviewed Mr. Esquibel, who claimed he had never been to Mr. Velasquez's house, let alone on February 12 or 13, 2020, and had "no idea" how his blood ended up on the broken glass and blinds.  However, Mr. Velasquez testified he and Mr. Esquibel had a relationship from October 2014 to December 2019 and several of their encounters had occurred in Mr. Velasquez's house.  Mr. Esquibel had asked Mr. Velasquez not to tell anyone about their relationship, but several people learned of it and Mr. Esquibel lost friends as a result.  Mr. Esquibel was unhappy because he believed Mr. Velasquez told others about their relationship.

[¶9]    The State charged Mr. Esquibel with first-degree arson in violation of Wyo. Stat. Ann. § 6-3-101(a) (LexisNexis 2021) for the February 12, 2020, front window incident (Count 1) and attempted first-degree arson in violation of Wyo. Stat. Ann. §§ 6-3-101(a) and 6-1-301(a) (LexisNexis 2021) for the February 13, 2020, side window incident (Count 2).  Following a trial, the jury found him not guilty of Count 1 but guilty of Count 2.  The district court sentenced Mr. Esquibel to 8-12 years in prison suspended in favor of a split sentence of 10 months in jail and three years of supervised probation.  Mr. Esquibel timely appealed.

## DISCUSSION

*Sufficiency of the Evidence*

[¶10] Mr. Esquibel argues the trial evidence was insufficient to convict him of attempted first-degree arson. In determining whether there is sufficient evidence to support a conviction, we apply the following standard of review:

> "[W]e examine and accept as true the State's evidence and all reasonable inferences which can be drawn from it. We do not consider conflicting evidence presented by the defendant. We do not substitute our judgment for that of the jury; rather, we determine whether a jury could have reasonably concluded each of the elements of the crime was proven beyond a reasonable doubt. This standard applies whether the supporting evidence is direct or circumstantial."

*Montee v. State*, 2013 WY 74, ¶ 18, 303 P.3d 362, 365 (Wyo. 2013) (quoting *Guerrero v. State*, 2012 WY 77, ¶ 14, 277 P.3d 735, 738-39 (Wyo. 2012), and *Anderson v. State*, 2009 WY 119, ¶ 6, 216 P.3d 1143, 1145 (Wyo. 2009)).

[¶11] Mr. Esquibel was found guilty of attempted first-degree arson under §§ 6-1-301 and 6-3-101(a). Section 6-3-101(a) states: "A person is guilty of first-degree arson if he maliciously starts a fire or causes an explosion with intent to destroy or damage an occupied structure." Section 6-1-301(a)(i) provides in pertinent part: "A person is guilty of an attempt to commit a crime if . . . [w]ith the intent to commit the crime, he does any act which is a substantial step towards commission of the crime." The statute defines "substantial step" as "conduct which is strongly corroborative of the firmness of the person's intention to complete the commission of the crime[.]" Section 6-1-301(a)(i). The conduct must amount to more than mere preparation. *See Adams v. State*, 2005 WY 94, ¶ 13, 117 P.3d 1210, 1215 (Wyo. 2005) ("The elements of the crime of attempt are: 1) an intent to do an act or bring about certain consequences which would in law amount to a crime; and 2) an act in furtherance of that intent which, as it is most commonly put, goes beyond mere preparation." (citing *Compton v. State*, 931 P.2d 936, 940 (Wyo. 1997)).

[¶12] The State argued Mr. Esquibel took a substantial step towards committing first-degree arson by breaking the side window and pouring gasoline down the wall. Mr. Esquibel does not contest the sufficiency of the evidence showing he broke the side window, as his blood was found on the broken glass and blinds. Nor does he dispute the evidence showing a liquid was poured down the wall under the broken window. Rather, Mr. Esquibel argues the State did not prove he took a "substantial step" toward committing first-degree arson because it failed to present sufficient evidence showing the liquid found inside Mr. Velasquez's home could start a fire, i.e., the liquid was an accelerant. He states the liquid was not tested, there was no evidence of any igniting or burning with respect to the side window, and Officer Zwiebel, the officer who testified regarding the incident on February 13, 2020, stated only that "there was what smelled to be an accelerant like gasoline," which, Mr. Esquibel claims, was pure speculation.

3

[¶13] Both Mr. Velasquez and Officer Zwiebel testified they smelled diesel/gasoline near the side window. When asked if he was "speculating that [the liquid he found] was an accelerant," Officer Zwiebel responded, "I know the odor of gasoline." The jury could reasonably find from this testimony that the liquid found near the side window was, in fact, gasoline, even though it was not tested. *See Robinson v. State*, 270 So.3d 980, 983 (Miss. Ct. App. 2018) (finding sufficient evidence that defendant used "an accelerant, gasoline" to start the fire where the victim's son saw the defendant at a gas station before the fire started; a police officer observed the defendant some hours after the fire was extinguished, standing in the middle of the road near the victim's house holding a gas can; and another officer testified the gas can was filled with a liquid that smelled like gasoline). *Cf. Regan v. State*, 2015 WY 62, ¶ 34, 350 P.3d 702, 709 (Wyo. 2015) (finding sufficient evidence showing substance found in defendant's vehicle was marijuana based in part on experienced police officers' testimony that they smelled the odor of raw marijuana when they approached his vehicle); *Tobias v. Dep't of Streets*, 454 So.2d 835, 836 (La. Ct. App. 1984) ("Officer Villere testified unequivocally that Tobias was carrying a container which contained gasoline. While no chemical tests were made of the substance the officer's testimony that it looked and smelled like gasoline was sufficient to prove that it probably was.").

[¶14] Officer Zwiebel testified gasoline is an accelerant. Mr. Esquibel argues this testimony was pure speculation because there was no evidence that Officer Zwiebel had any experience or training in identifying accelerants. However, as we will explain below, it is common knowledge that gasoline is an accelerant. In any event, Mr. Harley, who is a certified fire investigator, told the jury that gasoline is "[t]he most popular [example]" of an "ignitable liquid," which means that if it is lit, it will "develop a flame" or "[f]lash ignite." Mr. Esquibel did not object to this testimony at trial, nor does he claim on appeal that Mr. Harley was not qualified to provide such testimony.

[¶15] The State presented sufficient evidence at trial to show the liquid found near the broken side window was an accelerant (gasoline) and therefore that Mr. Esquibel took a "substantial step" toward the commission of first-degree arson.

### *Officer's Testimony*

[¶16] Mr. Esquibel claims Officer Zwiebel improperly opined as an expert that the liquid (which he identified as gasoline) found in Mr. Velasquez's home on the evening of February 13, 2020, was an accelerant even though he was not qualified to testify as an expert under Wyoming Rule of Evidence (W.R.E.) 702.

[¶17] "We [normally] review evidentiary rulings for abuse of discretion." *Klingbeil v. State*, 2021 WY 89, ¶ 32, 492 P.3d 279, 286 (Wyo. 2021) (quoting *Mitchell v. State*, 2020 WY 142, ¶ 17, 476 P.3d 224, 231 (Wyo. 2020)) (other citation omitted). However, because

Mr. Esquibel did not object to the subject testimony at trial, our review is for plain error. *Gutierrez v. State*, 2020 WY 150, ¶ 5, 477 P.3d 528, 530 (Wyo. 2020) (citing *Grater v. State*, 2020 WY 102, ¶ 7, 468 P.3d 1116, 1118 (Wyo. 2020)). "To satisfy the plain error standard, Mr. [Esquibel] must show (1) the record is clear about the incident alleged as error; (2) a violation of a clear and unequivocal rule of law; and (3) he was denied a substantial right resulting in material prejudice." *Ridinger v. State*, 2021 WY 4, ¶ 33, 478 P.3d 1160, 1168 (Wyo. 2021) (citing *Mraz v. State*, 2016 WY 85, ¶ 55, 378 P.3d 280, 293 (Wyo. 2016), and *Butler v. State*, 2015 WY 119, ¶ 16, 358 P.3d 1259, 1264 (Wyo. 2015)) (other citation omitted).

[¶18]  The first prong of plain error review is satisfied because the allegedly improper testimony clearly appears in the record.  Under the second prong, Mr. Esquibel "'must demonstrate the existence of a clear and unequivocal rule of law which the particular facts transgress in a clear and obvious, not merely arguable, way.'" *Brown v. State*, 2019 WY 102, ¶ 13, 450 P.3d 208, 211 (Wyo. 2019) (quoting *Schreibvogel v. State*, 2010 WY 45, ¶ 30, 228 P.3d 874, 885 (Wyo. 2010)) (other citation omitted).

[¶19]  Mr. Esquibel argues that whether a certain liquid is an accelerant is not common knowledge and requires an expert opinion under W.R.E. 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

According to Mr. Esquibel, Officer Zwiebel was not shown to be an expert under this rule because he did not testify to having any special training, experience, or scientific, technical, or specialized knowledge in the realm of accelerants.  Mr. Esquibel also complains Officer Zwiebel failed to provide sufficient facts or data in support of his opinion and his opinion was not the product of reliable principles and methods.

5

[¶20]  Mr. Esquibel's argument that Officer Zwiebel was not shown to be an expert and that his opinion was not supported by sufficient facts and was otherwise unreliable is an argument that Officer Zwiebel's testimony lacked foundation.  *See, e.g., Young v. State*, 2016 WY 70, ¶ 15, 375 P.3d 792, 796 (Wyo. 2016) (argument that witness's blood alcohol retrograde extrapolation was not reliable or accurate "relates to the foundation supporting [the witness's] testimony"); *In re Termination of Parental Rights To CG, SG, JG & SG*, 2003 WY 166, ¶ 11, 81 P.3d 208, 213 (Wyo. 2003) (the State laid proper foundation for each expert who testified by establishing each expert's education, experience, and interaction with Mother's children); *Herman v. Speed King Mfg. Co.*, 675 P.2d 1271, 1278 (Wyo. 1984) ("Foundation has been laid for the opinion of the expert when the qualification of the witness with respect to his knowledge or special experience is sufficiently established.").  Mr. Esquibel, however, did not object at trial to Officer Zwiebel's testimony on the basis of inadequate foundation.  "[O]bjections based on the adequacy of foundation must be made when the evidence is offered, and the failure to make a timely objection will preclude appellate review." *Mayhew v. State*, 2019 WY 38, ¶ 54, 438 P.3d 617, 634 (Wyo. 2019).  *See also, Young*, ¶ 16, 375 P.3d at 797 (failure to timely object on foundation grounds deprives the State of an opportunity to correct the deficiency).  As a result, we need not consider this issue.  In any event, Mr. Esquibel has failed to show Officer Zwiebel's testimony violated a clear and unequivocal rule of law in a clear and obvious way.

[¶21]  Without first establishing a foundation to offer an expert opinion, Officer Zwiebel testified he smelled gasoline near the broken side window and gasoline is an accelerant. The question, therefore, is not, as Mr. Esquibel argues, whether expert testimony is required to establish a <u>liquid</u> is an accelerant.  Rather, the question is whether expert testimony is required to establish <u>gasoline</u> is an accelerant.

[¶22]  The plain meaning of accelerant is "a substance used to accelerate a process (such as the spreading of a fire)."  https://www.merriam-webster.com/dictionary/accelerant. Black's Law Dictionary defines "accelerant" as "[a] flammable substance that increases the rate at which a fire will burn something." *Accelerant*, Black's Law Dictionary (11th ed. 2019).  It is common knowledge that gasoline is an accelerant.  *See, e.g., People v. Lorta*, No. B223460, 2010 WL 4160130, at *2 (Cal. Ct. App. Oct. 25, 2010) (unpublished) ("Although no expert witness testimony on the subject of arson was presented, it is common knowledge that gasoline is a highly volatile and flammable substance."); *Johnson v. State*, 539 S.E.2d 605, 607 (Ga. Ct. App. 2000) ("It is common knowledge that gasoline is flammable . . . ."); *United States v. Beldin*, 737 F.2d 450, 454 (5th Cir. 1984) ("It is common knowledge, of which we may take judicial notice, that gasoline, when ignited, not only burns but may explode.") (footnote omitted); *United States v. Poulos*, 667 F.2d 939, 942 (10th Cir. 1982) ("It is common knowledge that gasoline is highly combustible and capable of exploding."); *Stegall v. Catawba Oil Co. of N.C.*, 33 S.E.2d 138, 141 (N.C. 1963) ("We take judicial notice of the fact that gasoline either alone or mixed with kerosene constitutes a flammable commodity and a highly explosive agent."); *Brinegar v. Clark*,

371 P.2d 62, 65 (Wyo. 1962) ("[C]ourts have long considered gasoline and kerosene stored in large quantities to be dangerously inflammable[.]"); *McArthur v. Dutee W. Flint Oil Co.*, 146 A. 484, 488 (R.I. 1929) ("It is common knowledge that gasoline is very inflammable, and for that reason a dangerous substance, especially when brought in close proximity to excessive heat or an open fire."). Because it is common knowledge that gasoline is an accelerant, Officer Zwiebel did not need to meet the expert foundation requirements of W.R.E. 702 to testify that gasoline is an accelerant. *Tucker v. State*, 2010 WY 162, ¶ 21, 245 P.3d 301, 307 (Wyo. 2010) ("If a witness's testimony draws on experience beyond the ken of the average person, that witness must meet the qualification requirements of Rule 702."); *Kemper Architects, P.C. v. McFall, Konkel & Kimball Consulting Eng'rs, Inc.*, 843 P.2d 1178, 1190 (Wyo. 1992) ("W.R.E. 701 [the rule pertaining to opinion testimony by lay witnesses] cannot be read to allow a witness who fails to qualify as an expert to offer opinion testimony 'where the subject in question lies outside the realm of common experience and requires special skill or knowledge.' 3 David W. Louisell & Christopher B. Mueller, Federal Evidence § 376 at 419 (Supp.1992). Topics demanding special experience . . . require that only the testimony of a person possessing that special experience be received. *Randolph v. Collectramatic, Inc.*, 590 F.2d 844, 848 (10th Cir. 1979)."). *Cf. Rino v. Mead*, 2002 WY 144, ¶ 17, 55 P.3d 13, 19 (Wyo. 2002) ("[E]xpert testimony is not required where the common sense and experience of a layperson are sufficient to establish the standard of care." (citing *Meyer v. Mulligan*, 889 P.2d 509, 516 (Wyo. 1995)) (other citation omitted).

[¶23] Mr. Esquibel has not satisfied the second prong of plain error review. As a result, we need not address the third prong. *Ridinger*, ¶ 43, 478 P.3d at 1170.

## CONCLUSION

[¶24] The State presented sufficient evidence to support Mr. Esquibel's attempted first-degree arson conviction. The district court did not plainly err in allowing Officer Zwiebel to testify that gasoline is an accelerant.

[¶25] We affirm.

7